UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

SCIENTIFIC COMPONENTS CORP. d/b/a
MINI-CIRCUITS LABORATORY,

               Plaintiff,                        **MEMORANDUM & ORDER**
                                                      **03-CV-1851 (NGG)(RML)**

     v.

SIRENZA MICRODEVICES, INC.,

               Defendant.
-------------------------------------------------------------X

GARAUFIS, United States District Judge.

On July 10, 2006, Magistrate Judge Robert M. Levy issued a Report and

Recommendation ("R&R") in which he recommended that the motion for summary judgment of

defendant Sirenza Microdevices, Inc. ("Sirenza" or "Defendant") be denied and that the cross-

motion for summary judgment of plaintiff Scientific Components Corporation d/b/a Mini-

Circuits Laboratory ("Mini-Circuits" or "Plaintiff") be granted. The Defendant filed objections

to Judge Levy's R&R with this court on July 24, 2006. As Sirenza submitted timely objections

to the R&R, this court makes a <u>de novo</u> review of all portions of the R&R to which the

Defendant specifically objected. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). After a de novo

review, this court adopts the recommendations of Magistrate Judge Levy in their entirety.

Accordingly, the court denies the defendant's motion for summary judgment and grants the

Plaintiff's cross-motion for summary judgment.

Familiarity with the facts of the case, as outlined in Judge Levy's R&R, as well as the

substance of Judge Levy's R&R is presumed.

# I.    DISCUSSION

The Defendant has submitted five objections to conclusions reached by Judge Levy in his R&R. These objections are considered in turn below.

### 1.    *Sirenza's Warranty that ERA Amplifiers Would be "Unconditionally Stable"*

Mini-Circuits alleges a breach of express warranty on the part of Sirenza due to low frequency oscillation (LFO) in the ERA Amplifiers supplied by Sirenza. Mini-Circuits claims that Sirenza breached an express warranty by selling to it amplifiers that contained a defect, in the form of unwanted "noise" or LFO, and therefore that the amplifiers did not conform to the specification that the amplifiers be "unconditionally stable," as represented in Sirenza's sales materials.[1]

The Defendant points out that Judge Levy "correctly" found that "nothing in the comprehensive specifications developed for the ERA Amplifiers by Mini-Circuits referenced 'unconditional stability' or low frequency oscillation." (See Defendant's Objections to the Report and Recommendation ("Def.'s Objs.") at 7). Judge Levy went on to conclude, however, that because the term "unconditionally stable" can be found in a data sheet for Sirenza's SNA line of amplifiers, this created an express warranty notwithstanding language printed on the back of every purchase order Mini-Circuits submitted to Sirenza that arguably limits express

---

[1] Mini-Circuits alleges that Sirenza breached the express warranty to provide amplifiers in conformity with established specifications in two respects: first, by failing to provide "unconditionally stable" amplifiers, and, second, by failing to meet established noise parameters. The "unconditional stability" argument will be addressed in this section, and the noise parameter argument will be addressed in the next section, part I.2, of this opinion.

warranties to identified specifications.[2]  Sirenza argues that Judge Levy erred in his reliance on

the "general proposition that 'any representation of fact by a seller about the product can

constitute an express warranty.'"  (Id. (quoting R&R at 14)).  It is Mini-Circuits' position that the

requirement that amplifiers be "unconditionally stable" was an incorporated specification as a

representation of fact by Sirenza through its sales material, specifically the SNA Data Sheet.

Sirenza's specific objection raised is that Judge Levy's reliance on Sirenza's SNA

Amplifier data sheet as the "representation of fact" that constitutes the express warranty was

erroneous because it "ignore[s] the integration clauses contained in the purchase orders, which

expressly precluded any reliance on pre-contractual representations – whether oral or in writing –

for 'incorporation' as warranties."  (Def.'s Objs. at 8).[3]  Accordingly, Sirenza maintains that

---

[2] The Terms and Conditions printed on the back of all purchase orders included the
following:

> 9.  EXPRESS WARRANTIES AND REPRESENTATIONS OF SELLER.  Seller hereby
> makes the following representations and warranties in favor of Buyer, and where
> applicable, customers of Buyer: (1) at the time of delivery to Buyer and thereafter, all
> Goods will (i) be free from defects in material and workmanship; and (ii) conform in all
> respects to applicable Specifications . . . .

> 22.  SPECIFICATIONS.  Seller agrees not to make any changes or modifications to the
> Specifications without first obtaining the prior written approval of Buyer.  For purposes
> hereof, the term "Specifications" means all specifications, drawings, writing, recordings,
> pictorial reproductions, computer programs and other graphic representations and works
> of a similar nature identified on the face hereof and provided by Buyer to Seller or
> supplied by Seller and accepted by Buyer in writing, together with all changed and
> modifications hereto.  Such specifications are hereby incorporated into this Order by
> reference.

[3] Paragraph 21 of Mini-Circuits' purchase orders states as follows:

> 21.  INTEGRATION.  This Order is intended by the parties to be a final, complete and
> exclusive statement of their agreement with respect to the subject matter hereof.  All prior
> and contemporaneous oral or written agreements, statements, understandings and

because the data sheet was not part of the contract between the parties, it cannot generate an independent express warranty in light of the integration clause.  (Id.).

Whether there is merit to Sirenza's argument or not, it will not be considered by this court.  Sirenza states that Judge Levy "ignored" the integration clause.  This assertion is unjust. This court has reviewed the extensive briefing submitted by both parties on the motions and cross-motions, as well as the transcript of the two-hour oral argument over which Judge Levy presided.  Nowhere in the papers or argument did Sirenza raise the issue of the integration clause contained in the purchase orders.  To say that Judge Levy "ignored" the issue is unfair given that Sirenza itself never raised it.  Judge Levy's forty-five page opinion is unquestionably comprehensive.

In this district and circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.  See Pan Am. World Airways v. Int'l Bhd. of Teamsters, 894 F.2d 36, 40 n.3 (2d Cir. 1990); Travelers Ins. Co. v. Estate of Garcia, No. 00-CV-2130, 2003 WL 1193535, at *2 (E.D.N.Y. Feb. 4, 2003) ("[D]istrict courts will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.") (citations omitted); Henrietta D. v. Giuliani, No. 95 CV 0641, 2001 WL 1602114, at *3 (E.D.N.Y. Dec. 11, 2001) ("It is well established that issues that were not raised before the Magistrate may not properly be deemed objections to any finding or recommendation made in the Report and Recommendation.") (internal quotation and citation omitted); Abu-Nassar v. Elders Futures, Inc., No. 88 Civ. 7906,

_____

communications are hereby excluded and are superseded.

1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994) (refusing to entertain new arguments not raised before Magistrate Judge and holding that to do otherwise "would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments") (citations omitted).  Therefore, as Sirenza failed to raise the integration clause argument before Judge Levy, I will not consider it now.

The integration clause argument is the only specific objection raised to Judge Levy's conclusion that a triable issue of fact exists regarding whether Sirenza warranted that the amplifiers would be "unconditionally stable," and if it did, whether that constituted an express warranty that the amplifiers would not exhibit LFO.  As I have determined that I will not consider the integration clause argument, I need not engage in a discussion of the entirety of Judge Levy's conclusions of fact and law regarding the express warranty of "unconditional stability" under a de novo standard of review.  See Henrietta, 2001 WL 1602114, at *2 ("The court . . . is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed.") (citing Thomas v. Arn, 474 U.S. 140, 150 (1985).

I have reviewed the portion of Judge Levy's R&R that addresses this claim, and I am duly satisfied that Judge Levy has correctly applied the relevant law to the facts of this case in concluding that a triable issue of fact exists precluding summary judgment.  See Urena v. New York, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.") (internal quotation and citation omitted).  I therefore adopt Judge Levy's conclusion that summary judgment is unwarranted with

respect to Mini-Circuits's claim that Sirenza breached an express warranty to provide "unconditionally stable" amplifiers.

### 2. Sirenza's Warranty that ERA Amplifiers Would Meet Noise Specifications

Sirenza next challenges Judge Levy's conclusion that a triable issue of fact exists as to whether the ERA Amplifiers it supplied to Mini-Circuits "'conformed to the specifications that established parameters for noise.'" (Def.'s Objs. at 9 (quoting R&R at 15)). Sirenza maintains that Judge Levy failed to follow the standard set forth in the seminal Supreme Court case Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), specifically the requirement under Liberty Lobby that the non-moving party to a summary judgment motion come forward with specific facts showing the presence of a genuine issue of material fact for trial in order to defeat the motion. (Def.'s Objs. at 9).

Upon de novo review, this court agrees that there exists a triable issue of fact with respect to whether the amplifiers Sirenza provided conformed to specifications concerning noise parameters. Sirenza argues that the "unsupported, conclusory" allegation of Harvey Kaylie, the President of Mini-Circuits, that the amplifiers failed to meet noise specifications because they "exhibited noise levels hundreds, if not thousands, of times in excess of the maximum allowable noise levels under the specifications," (Declaration of Harvey Kaylie, dated Jan. 27, 2006 ("Kaylie Decl."), ¶ 13), cannot create an issue of fact. (See Def.'s Objs. at 9). This court, however, finds that Kaylie's testimony is supported by specific facts in the record, creating a factual issue and mandating denial of Sirenza's motion for summary judgment.

The Defendant does not deny that some of the amplifiers it sold Mini-Circuits exhibited LFO. (Transcript of Oral Argument before Magistrate Judge Levy, dated May 22, 2006 ("Tr.") at

7).  In addition, the Plaintiff does not deny that the specifications it established for the ERA

amplifiers it purchased from Sirenza contain no specific mention of low frequency oscillation.

(Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment

and in Support of Plaintiff's Cross-Motion for Summary Judgment Dismissing Defendant's

Counterclaims, dated Jan. 27, 2006 ("Pl.'s Mem.") at 27).  However, the record shows that

specifications established electrical and performance characteristics and set parameters for

frequency range and noise.  (See Declaration of Scott H. Wyner, Esq., dated Dec. 16, 2005

("Wyner Decl."), Exs. O, Q).  Harvey Kaylie explained as follows:

> It is my understanding that Sirenza is attempting to disclaim liability for the
> defective parts because they allegedly conform to Mini-Circuits' required
> electrical specifications.  In fact, they do not.  These specifications require the
> parts to perform consistently and in accordance with performance specifications
> across a broadband of frequencies; from DC or 0 (low frequency) to 8000 MHZ
> (high frequency).  There is also an electrical specification for "noise," which is
> essentially unwanted or unintended signals.  Under the specifications, noise was to
> be limited to a maximum number of decibels (dB) which varied according to part.
> The defective parts exhibited noise levels hundreds, if not thousands of times in
> excess of the maximum noise levels contained in the specifications.  Moreover,
> the excess noise occurred between the frequencies of DC to 8000 MHZ.
> Accordingly, although there is no category "LFO" or "oscillations" contained
> within Mini-Circuits electrical specifications, the parts exhibiting the LFO were
> not in conformance with the performance specifications.

(Kaylie Decl. ¶ 13).  Contrary to Sirenza's claims, Kaylie's assertion that the amplifiers failed to

conform to the established specifications setting noise parameters was not unsupported or

conclusory.  Rather, the record reflects that Mini-Circuits received numerous customer

complaints regarding system failures of amplifiers due to LFO, and, in response, Mini-Circuits

performed tests to analyze the problem.  (See Kaylie Decl. ¶ 9, Exs. E, F (customer complaints);

¶ ¶ 10, 11 (testing)).  Thus, Sirenza's claim that Kaylie's assertion is unsupported and

conclusory, and therefore cannot defeat Sirenza's motion for summary judgment, is without

merit. Kaylie's assertion, rather, is supported by facts in the record, and thus adequately

responds to Sirenza's motion for summary judgment by raising a triable issue of fact.

Sirenza also maintains that testimony and documents in the record establish that Sirenza's

amplifiers met specifications, and challenges Judge Levy's finding to the contrary. (Def.'s Objs.

at 10-12). First at issue is the testimony of Michael Fainboym, Mini-Circuits' Quality Assurance

Team Leader and the person who was responsible for investigating and evaluating customer

complaints concerning LFO at Mini-Circuits. Admittedly, the testimony of Fainboym is

confusing; when questioned about a Return Material Evaluation Report he created in connection

with customer complaints concerning LFO, he states both that the amplifiers met specifications

and that they exhibited LFO. The relevant portion of Fainboym's deposition testimony is as

follows:

> Q:  Referring you to page 159 [of Exhibit 9] and to your conclusions, number
>     1 states all four units met specifications. What does that mean?
> A:  It means that specifications, as we saw in previous exhibit, do not have any
>     provision, any warning about low frequency oscillation. It is just assumed
>     that amplifier[s] should not oscillate. So specifications are met and we
>     tested for gain, for return loads, for whatever we tested.
> Q:  So on all of the items in which you specify for customers, it meets the
>     specifications.
> A:  Yes.
> Q:  Then you go on to number 2.
> A:  Number 2, "low frequency spurs were observed on all four units." Do you
>     want me to read every statement?
> Q:  No, it's okay.
> A:  We confirmed that there were spurs.
> Q:  The report just confuses me. The first thing says it meets the
>     specifications. The second thing says there are spurs. Which one's right?
> A:  Both. Both. At this time, at this time it was correct statement.

(Deposition of Michael Fainboym, dated Apr. 15, 2004 ("Fainboym Dep.") at 124-25, annexed as

Ex. A to the Declaration of Derek J. Craig, Esq., dated Feb. 24, 2006 ("Craig Decl.")).  Judge

Levy correctly concluded that Fainboym's testimony does not "demonstrate conclusively that the

specifications were satisfied in all respects."  (R&R at 12 n.5).  If anything, Fainboym's

explanation illustrates clearly the factual issue presented, i.e. whether the existence of LFO

represents a deviation from specifications notwithstanding the fact that the specs did not

explicitly mention LFO.  Fainboym's conclusion that "it is just assumed that amplifier[s] should

not oscillate" highlights the fact dispute.  Given that noise parameters were set requiring the

amplifiers to perform across a broadband of frequencies from low frequency to 8000 MHZ, there

is a factual dispute over whether the LFO constitutes non-compliance with the noise

specifications.

Finally, Sirenza's argument that the affidavit of John Ocampo, Sirenza's Chairman and

co-founder, warrants summary judgment in its favor is also rejected.  Ocampo attests that the

ERA amplifier specifications "do not cover low frequency oscillation and do not set standards for

noise performance at low frequency levels," but rather provide specifications for noise that are

"unrelated to the low frequency oscillation with respect to which Mini-Circuits complains."

(Declaration of John Ocampo in Support of Defendant's Motion for Summary Judgment, dated

Dec. 14, 2005 ("Ocampo Decl."), ¶ 13).  Ocampo's statement again highlights the fact issue that

bars summary judgment, viz. whether there has been a breach of noise specifications by Sirenza

in connection with the LFO.  As the Plaintiff aptly stated, "the conflicting declarations between

Mr. Kaylie and Mr. Ocampo as to whether the specifications for noise relate to the LFO creates a

classic question of fact."  (Plaintiff's Response to Defendant's Objections to Magistrate's R&R

("Pl.'s Resp."), at 15).

Thus, upon de novo review, I find that a triable issue of fact exists as to whether the ERA

Amplifiers Sirenza supplied to Mini-Circuits conformed to the specifications that established

parameters for noise.   There is also a triable issue of fact as to whether Sirenza warranted that it

would provide "unconditionally stable" amplifiers, and if so, whether that express warranty was

breached.   Therefore, the Defendant's motion for summary judgment on Plaintiff's claim that

Sirenza breached its express warranty to Mini-Circuits due to low frequency oscillation is denied.

### 3.     Sirenza's Warranty Against Defects

Sirenza next raises a specific objection to Judge Levy's conclusion that a triable issue of

fact exists as to whether LFO constitutes a "defect in material or workmanship," and his

recommendation that this court deny Sirenza's motion for summary judgment on Mini-Circuit's

claim that Sirenza breached an express warranty against such defects.  (See Def.'s Objs. at 12-

14).  In the paragraph covering "Express Warranties and Representations of Seller," included in

the Terms and Conditions printed on the back of all purchase orders Mini-Circuits submitted to

Sirenza, in addition to warranting conformity with specifications, Sirenza expressly warranted

that "at the time of delivery to Buyer and thereafter, all Goods will be free from defects in

material and workmanship."  (Kaylie Decl., Ex. D).[4]  The critical question, therefore, is whether

the LFO constituted such a defect.  The Defendant's position is that the LFO is merely a physical

characteristic of aluminum gallium arsenide used to manufacture the dies that are part of the

amplifiers.  Thus, Sirenza argues that the LFO is not a defect, but occurred because the ERA

amplifiers were simply not meant to be used at very low frequencies.  (See Defendant's

Memorandum of Law in Further Support of Motion for Summary Judgment and in Opposition to

---

[4] See also, note 2, supra.

Plaintiff's Cross-Motion for Summary Judgment ("Def.'s Mem. L. Opp'n") at 6; Tr. at 8, 9, 11, 18, 23, 27-28).

Judge Levy began his discussion of this issue by citing the Second Circuit case of Castro v. QVC Network, Inc., 139 F. 3d 114, 117 (2d Cir. 1998), for the proposition that the determination of a "defect" in a breach of warranty claim under the Uniform Commercial Code focuses on consumer expectations. (See R&R at 16). Sirenza maintains that Judge Levy incorrectly relied on this case, stating the following: "Magistrate Levy, misapplying Castro v. QVC Networks, Inc., *an entirely inapplicable products liability case*, ruled that a defect in material can be demonstrated when consumer expectations about the product are not met. Castro provides no such authority." (Def.'s Objs. at 13) (emphasis added). The Defendant is only partly correct. Castro is by no means an "entirely inapplicable products liability case." The case addressed the question of whether an injured plaintiff who brings separate causes of action for strict liability and for breach of warranty would be entitled to separate jury instructions on each claim. The court held that these two causes of action were indeed distinct. Castro, 139 F.3d at 115.[5] Thus, the circuit court considered the differing definitions of "defect" in the products liability context and the U.C.C.-based breach of warranty context, specifically stating that "imposition of strict liability for an alleged design 'defect' is determined by a risk-utility standard," while, as Judge Levy quoted, "[t]he notion of 'defect' in a U.C.C.-based breach of

_____

[5] The Castro court relied on the New York Court of Appeals' decision in Denny v. Ford Motor Co., 87 N.Y.2d 248 (N.Y. 1994). The Second Circuit certified the Denny case to the New York Court of Appeals to answer the following questions: (1) whether, under New York law, the strict products liability and implied warranty claims are identical; and (2) whether, if the claims are different, the strict products liability claim is broader than the implied warranty claim and encompasses the latter. The N.Y. Court of Appeals answered both questions in the negative.

warranty claim focuses, instead, on consumer expectations." Id. at 118 (internal citations omitted). The case, therefore, is certainly not "inapplicable" to the instant matter. However, upon close examination of Castro, I find that it is not directly applicable to the pending motion. In stating that the "defect" analysis in a breach of warranty claim focuses on consumer expectations, the Castro court was dealing in the context of the *implied warranty of merchantability*, and not an express warranty that goods will be free from defects in material or workmanship, as is at issue in the instant case. This is clear from the court's discussion of New York's Uniform Commercial Code § 2-314, which states that a warranty that goods shall be merchantable is "implied in a contract for their sale if the seller is a merchant with respect to goods of that kind" and that to be merchantable good must be "fit for the ordinary purposes for which such goods are used . . . ." N.Y. U.C.C. § 2-314(2)(c); see Castro, 139 F.3d at 117-18 & n.7. Thus, it is not clear from Castro that consumer expectations necessarily define what constitutes a "defect" for the purposes of an express warranty against defects.

Nonetheless, I find Judge Levy's ultimate conclusion correct. As Judge Levy stated, where the term "defect" is not defined in the purchase orders and the contract language is unambiguous, this court gives the word its plain and ordinary meaning. In re Prudential Lines Inc., 158 F.3d 65, 77 (2d Cir. 1998) ("Unambiguous terms are to be given their 'plain and ordinary' meaning.") (internal quotation and citation omitted). The ordinary meaning of the term "defect" is "a lack of something necessary for completeness, adequacy or perfection: deficiency." Webster's Ninth New Collegiate Dictionary 333 (9th ed. 1990). Although Judge Levy analyzed the question primarily with respect to whether customers would have expected the contested amplifiers to perform adequately at low frequency, he nonetheless correctly concluded that there

12

exists a question of material fact as to whether the LFO constitutes a "defect" in violation of Sirenza's express warranty. Whether the analysis focuses on consumer expectations of adequacy or perfection, Mini-Circuit's own expectations, or anyone else's expectations, the fact dispute remains.

This court finds that there are questions of fact as to whether there was a "defect" in the gallium arsenide substrate of the dies used in the ERA amplifiers. If Sirenza warranted that the amplifiers would perform across a broadband, including low frequency, as Mini-Circuits alleges, and they exhibited a deficiency at low frequencies, then there very well may be a breach of the express warranty against defects. I cannot find as a matter of fact or law that there has been no such breach. Indeed, I agree fully with Judge Levy that it is likely that expert evidence will be required to decide this claim. (See R&R at 19). I therefore deny the Defendant's motion for summary judgment on Plaintiff's claim of breach of express warranty against defects in material or workmanship as issues of fact appropriate for trial remain.

### 4. Sirenza's Warranty of Merchantability

Sirenza's fourth objection concerns the Plaintiff's claim of breach of the implied warranty of merchantability. On this claim, Magistrate Judge Levy recommended that this court deny Sirenza's motion for summary judgment, finding that triable issues of fact existed as to whether there was or was not a breach of the implied warranty of merchantability.

Judge Levy accurately stated the applicable law. Pursuant to N.Y. U.C.C. § 2-314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." The statute provides that in order for goods to be merchantable, they must be "fit for the ordinary purposes for which such goods are used." N.Y.

U.C.C. § 2-314(2)(c). "Thus, liability for breach of warranty [of merchantability] depends on 'the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners.'" Derienzo v. Trek Bicycle Corp., 376 F. Supp. 2d 537, 570 (S.D.N.Y. 2005) (quoting Denny v. Ford Motor Co., 87 N.Y.2d 248, 258 (N.Y. 1995)); see also Wojcik v. Empire Forklift, Inc., 783 N.Y.S.2d 698, 701 (N.Y. App. Div. 3 Dept. 2004) ("To establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners.") (internal quotations and citations omitted).

Sirenza maintains that the comprehensive performance specifications supplied by Mini-Circuits in connection with the manufacturing of the ERA amplifiers serve to supersede the implied warranty of merchantability, thereby mandating summary judgment in Defendant's favor on this claim. (See Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem. L. Supp."), at 10-11). Citing section 2-317(c) of New York's Uniform Commercial Code, the Defendant asserts, "the implied warranty of merchantability is displaced by the express warranty that the goods will comply with the specifications." (Def.'s Mem. L. Supp. at 10). Section 2-317(c), however, states in full that "express warranties displace *inconsistent* implied warranties other than an implied warranty of fitness for a particular purpose." N.Y. U.C.C. § 2-317(c) (emphasis added). The distinction, as Judge Levy correctly emphasized in his R&R, is critical. (See R&R at 22 ("This does not mean that *any* specifications will void the implied warranty of merchantability; the question is whether the specifications are

inconsistent with the implied warranty, such that the buyer should be held responsible for the defect.") (emphasis in original)).

Comment 9 of U.C.C. § 2-316, explains the scenario in further detail:

The situation in which the buyer gives precise and complete specifications to the seller is not explicitly covered in this section, but this is a frequent circumstance by which the implied warranties may be excluded. The warranty of fitness for a particular purpose would not normally arise since in such a situation there is usually no reliance on the seller by the buyer. The warranty of merchantability in such a transaction, however, must be considered in connection with the next section on the cumulation and conflict of warranties. Under paragraph (c) of that section in case of such an inconsistency the implied warranty of merchantability is displaced by the express warranty that the goods will comply with the specifications. Thus, where the buyer gives detailed specifications as to the goods, neither of the implied warranties as to quality will normally apply to the transaction *unless consistent with the specifications*.

N.Y. U.C.C. § 2-316, comment 9 (emphasis added). Thus, Sirenza's argument that the electrical specifications displace the implied warranty is only correct to the extent that the specifications are inconsistent with the warranty of merchantability. Judge Levy concluded that they were not inconsistent, and, upon de novo review, this court agrees.

It has previously been mentioned that there is no dispute that the specifications for the ERA amplifiers supplied by Mini-Circuits did not mention LFO. Thus, to the extent that the "ordinary purpose" for which the ERA amplifiers are used includes use at low frequencies without unwanted LFO (in other words, if consumers would have expected as much when using the amplifiers in customary, usual and reasonably foreseeable manners), then the specifications are not inconsistent with the implied warranty of merchantability and that warranty may have been breached. As Judge Levy put it: "nothing in Mini-Circuits's specifications required Sirenza to use dies that exhibited low frequency oscillation." (R&R at 23). Thus, the specifications do

not, as a matter of law, displace the implied warranty of merchantability in this case; genuine issues of material fact exist as to whether this implied warranty has been breached by Sirenza.

The issue presented here is factually analogous to the case of <u>Zeon Chemicals USA, Inc. v. CPS Chemical Co., Inc.</u>, Nos. 96-5668, 96-5723, 1997 WL 659683, 127 F.3d 1103 (Table), (6th Cir. Oct. 22, 1997), an unpublished decision of the Sixth Circuit Court of Appeals. Although the <u>Zeon</u> case provides no precedential value to the instant matter, it's reasoning is instructive. There, the plaintiff/buyer (Zeon) entered into a contract with the defendant/seller (CPS) in which CPS agreed to sell to Zeon a chemical compound known as MEA. <u>See Zeon</u>, 1997 WL 659683, at *1. At some point, some of the MEA supplied by CPS became contaminated, and a claim for breach of the implied warranty of merchantability ensued. <u>Id.</u>

The Sixth Circuit affirmed the district court's conclusion that CPS breached the implied warranty of merchantability notwithstanding the facts that "[u]nder the terms of the contract, CPS was to supply MEA in accordance with specifications provided by [Zeon]," and that Zeon did so. <u>Id.</u> Relying on Kentucky's Uniform Commercial Code, identical to the New York provisions discussed above, CPS argued that the implied warranty of merchantability had been displaced by the express warranty created by the specifications. The circuit court disagreed, finding that the implied warranty was not inconsistent with the express warranty: "CPS could have made the MEA pursuant to the specifications without making an unmerchantable product." <u>Id.</u> at * 2. The <u>Zeon</u> court distinguished the case before it from others that held that because a product did not breach the express warranty to conform with specifications there could be no breach of the implied warranty of merchantability. The distinction, the court explained, rested on the grounds that in <u>Zeon</u> the specifications did not require "the defect to be incorporated into the product."

Id.  Thus, the court concluded, "[CPS] was not faced with the dilemma of either breaching the express warranty of description or the implied warranty of merchantability."  Id.

Like Judge Levy was, I am convinced by the sound reasoning of Zeon.  In the instant matter, there is at least an issue of fact as to whether LFO was incorporated into the specifications Mini-Circuits required of Sirenza.  From the record, it appears as if the opposite is true, i.e. that the specifications did not require Sirenza to use dies that exhibited LFO.  Indeed, as Sirenza emphasizes throughout its motion papers, the majority of amplifiers it supplied to Mini-Circuits did not exhibit LFO, and thus breached neither the express nor implied warranty.  However, that some amplifiers did exhibit LFO raises a triable issue of fact on Mini-Circuit's claim.  This court finds that the express warranty to conform to specifications and the implied warranty of merchantability are not inconsistent as a matter of law.

Sirenza cites several cases in support of its argument that the specifications void the implied warranty of merchantability.  This court has considered those cases, but finds them unpersuasive in demonstrating that judgment as a matter of law is appropriate here.  For example, although several of the cases cited by Sirenza have holdings that favor Sirenza's position, they present little, if any, legal analysis to guide this decision.  See, e.g., Paul T. Freund Corp. v. Commonwealth Packing Co., 288 F. Supp. 2d 357, 371 (W.D.N.Y. 2003) (cited in Def.'s Mem. L. Supp. at 10); Leahy v. Mid-West Conveyor Co., 120 A.D.2d 16 (N.Y. App. Div. 3d Dep't 1986) (cited in Def's Mem. L. Supp. at 10); Blockhead, Inc. v. Plastic Forming Co., Inc., 402 F. Supp. 1017 (D. Conn. 1975) (cited in Def.'s Objs. at 15).[6]  Judge Levy discussed in some detail

---

[6] In Freund, the district court dismissed a claim of implied breach of the warranty for merchantability, citing the displacement language of comment 9 to U.C.C. § 2-317.  In presenting the facts of the case, the opinion mentions that specifications were provided by the

the decision in <u>Stroock Plush Co. v. Talcott</u>, 134 N.Y.S. 1052 (N.Y. App. Div. 2d Dep't 1912), where the New York appellate court held that there was no breach of an implied warranty for merchantability where "the product [delivered] exactly corresponds to the thing proposed . . . ." <u>Stroock</u>, 134 N.Y.S. at 1060. The <u>Stroock</u> decision is distinguishable on several grounds. First, as it is a 1912 case, it does not implicate the Uniform Commercial Code or its express provision that an express warranty will only displace an inconsistent implied warranty. Second, on its facts, <u>Stroock</u> presents a different factual scenario in that the ability of the product at issue there (a coat) to function as a coat was not compromised by the alleged defect. Rather, as Judge Levy noted, the defect was aesthetic in nature, in that it concerned only the emboss on the fabric, which disappeared upon pressing or exposure to moisture. <u>See</u> <u>id.</u> at 1056; R&R at 23 n. 15. In the dispute between Mini-Circuits and Sirenza, the product at issue allegedly is incapable of

---

buyer to the seller regarding the products in question. <u>Freund,</u> 288 F. Supp. 2d at 365. However, the opinion does not discuss at all whether the specifications were consistent or inconsistent with any implied warranty.

The <u>Leahy</u> case similarly provides little support to Sirenza's argument. There, the Appellate Division first addressed the Plaintiff's strict products liability claim and held that "where a component part manufacturer produces a product in accordance with the design, plans and specifications of the buyer and such design, plans and specifications do not reveal any inherent danger in either the component part or the assembled unit, the component part manufacturer will be held blameless for an injury to the buyer's employee in a strict products liability action." <u>Leahy</u>, 120 A.D. 2d at 18. In the final sentence of the opinion, the court stated: "Further, to the extent that the alleged breach of the warranty of merchantability relates to the design of the conveyors, and since the buyer was responsible for that design, no warranty of merchantability arose." <u>Id.</u> at 19. Although the holding on the implied warranty of merchantability lends support to Sirenza's position, the case is hardly persuasive in light of its dearth of legal analysis on the issue. It appears that the <u>Leahy</u> court may have opted to equate the implied warranty of merchantability claim with a strict products liability claim, which is in error. <u>See</u> <u>Denny v. Ford Motor Co.,</u> 87 N.Y.2d 248 (N.Y. 1994).

Finally, in its objection to the R&R, the Defendant also draws the court's attention to the <u>Blockhead</u> case. This decision, however, is a *post*-trial decision, and thus supports the conclusion that the pending motion in the instant case raises issues of fact requiring a trial.

serving as an amplifier at low frequencies due to the alleged defect, the low frequency oscillation.

As an alternative to its argument that the implied warranty of merchantability is displaced by the express warranty of conformity to specifications, Sirenza maintains that, if an implied warranty applies, the amplifiers it supplied were in fact merchantable and satisfied such a warranty. (See Def.'s Objs. at 17). Sirenza declares that Mini-Circuits conceded that the "vast majority" of the amplifiers' applications are not affected by LFO,[7] and that Mini-Circuits purchased and sold "nearly twenty million ERA amplifiers, over a six-year period" before receiving inquiries about LFO from less than one percent of its more than one-thousand customers. (See Def.'s Objs. at 17). Thus, relying on the large quantity of admittedly merchantable products Sirenza provided to Mini-Circuits, Sirenza claims that it has not breached the implied warranty of merchantability as a matter of law. This argument fails. As Judge Levy correctly found, "the fact that many applications would not be affected by the LFO is irrelevant; frequency of use is not the same as foreseeability of use." (R&R, at 24).

Thus, in conclusion, this court finds that the express warranty to conform to specifications and the implied warranty of merchantability are not inconsistent as a matter of law, and that the express warranty therefore does not displace the implied warranty. Genuine issues of fact remain as to whether Sirenza has breached the implied warranty of merchantability, and Sirenza's motion for summary judgment on this claim is therefore denied.

### 5. *Sirenza's Counterclaims against Mini-Circuits*

Finally, Mini-Circuits has moved for summary judgment on the counterclaims brought by

---

[7] Mini-Circuits objects to the assertion that it conceded that a vast majority of the applications for the amplifiers would not be affected by LFO. (See Pl.'s Resp. at 16). In any event, the fact is immaterial to this decision.

Sirenza against it, which include the following: (1) misappropriation of trade secrets; (2) unfair competition; (3) breach of fiduciary duty; and (4) breach of the covenant of good faith and fair dealing.  On each of the four counterclaims asserted, Magistrate Judge Levy recommended that Mini-Circuits' motion for summary judgment be granted.  Sirenza objects to Judge Levy's conclusions on several bases, each of which will be discussed briefly.  In sum, however, this court finds upon de novo review that Judge Levy's comprehensive legal and factual analysis is correct, and comes to the same conclusions as he did.

First, Sirenza challenges Judge Levy's recommendation as to the dismissal of Sirenza's counterclaims for misappropriation of trade secrets and unfair competition.  (Def.'s Objs. at 18).  Specifically, Sirenza takes issue with Judge Levy's finding that because there was no *express* contractual requirement between the parties that addressed the handling of proprietary information delivered to Mini-Circuits there were no facts creating a triable issue as to whether a duty of fidelity was created.  (See R&R at 31, 36).  Sirenza cites the case of Natural Organics, Inc. v. Protein Plus, Inc., 724 F. Supp. 50 (E.D.N.Y. 1989), for the proposition that confidential obligations can arise in the absence of a writing to such effect.  First, the Natural Organics case can hardly be said to stand for such a proposition.  There, the plaintiff/purchaser had an express written agreement with the defendant/supplier that required the defendant to turn over the proprietary information at issue (a formula) to the plaintiff, there was a written agreement acknowledging the plaintiff as owner of the formula, and the court found that the plaintiff "took all reasonable means to maintain the secrecy of the formulas."  Natural Organics, 724 F. Supp. at 53.  The dispute between Sirenza and Mini-Circuits is distinguishable on all of these grounds.  Moreover, Judge Levy considered at length whether any facts had been raised that could support

a finding that a fiduciary duty was created between the parties – whether expressly written, implied, or otherwise – and correctly concluded that there were none. Thus, Sirenza's objections on this ground are rejected.

Next, Sirenza states that Judge Levy "does not even address the issue as to whether Mini-Circuits exceed[ed] the limited license granted to it with respect to the proprietary information required from and delivered by Sirenza." (Def.'s Objs. at 18). Again, this objection is without merit as Judge Levy correctly found that there was no duty created between the parties which a reasonable juror could find that Mini-Circuits breached.

Finally, Sirenza raises an objection to Judge Levy's recommendation that its counterclaim for breach of the covenant of good faith and fair dealing be dismissed. (Def.'s Objs. at 19-20). Sirenza accurately points out that Judge Levy conceded that a return of the amplifiers by Mini-Circuits with knowledge that they were not defective, but rather to decrease its inventory of Sirenza's amplifiers, could constitute a breach of the covenant. (See R&R at 42). Based on that statement, Sirenza urges that Judge Levy improperly recommended dismissal of the claim because a fact issue exists as to whether the amplifiers Mini-Circuits returned are in fact defective. Sirenza characterizes Judge Levy's conclusion as being based on the fact that Sirenza offered only its "belief" that the returned ERA amplifiers were not defective. (See Def.'s Objs. at 20). This, however, is not accurate. Judge Levy found that Sirenza offered no competent evidence to raise a triable issue of fact as to whether Mini-Circuits "acted in bad faith or sought to return the amplifiers with the improper motive of ridding itself of excess inventory." (R&R at 44). Whether the amplifiers were in fact defective is not relevant to this finding. This court finds that the plaintiff Mini-Circuits is entitled to summary judgement on Sirenza's counterclaim of

breach of the covenant of good faith and fair dealing.

**II.     Conclusion**

For the reasons stated above, the Report and Recommendation of Magistrate Judge Levy is adopted in its entirety.  Sirenza's motion for summary judgment on Mini-Circuits claims is DENIED; and Mini-Circuits' motion for summary judgment on Sirenza's counterclaims is GRANTED.  The parties are directed to contact Magistrate Judge Levy to prepare for trial.


SO ORDERED.

Dated: August 30, 2006                    _____/s/_____
Brooklyn, N.Y.                                  Nicholas G. Garaufis
                                                      United States District Judge