UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SCIENTIFIC COMPONENTS CORPORATION
d/b/a MINI-CIRCUITS LABORATORY,

       Plaintiff,

   v.

SIRENZA MICRODEVICES, INC.,


       Defendant.
-----------------------------------------------------------X
GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**
03-CV-1851 (NGG)

Scientific Components Corporation d/b/a MINI-CIRCUITS LABORATORY ("Mini-Circuits" or "Defendant") brings this motion against Sirenza Microdevices, Inc. ("Sirenza" or "Plaintiff") pursuant to Rule 11 of the Federal Rule of Civil Procedure ("Rule 11"). Mini-Circuits alleges that Sirenza's attorneys should be sanctioned for filing and litigating counterclaims without conducting a reasonable inquiry into their basis and without evidentiary support. (Pl.'s Br. at 1.) Sirenza argues that its lawyers' actions are not sanctionable because each of the counterclaims was supported by acceptable reasoning and sufficient evidence. (Def.'s Br. at 2.) For the reasons set forth below, Mini-Circuits' motion is DENIED.

**I.    BACKGROUND**

Sirenza is a corporation that designs and manufactures electronic components, including radio frequency amplifiers. (Ocampo Decl. dated Dec. 14, 2005 (Brown Decl. Ex. N) (hereinafter, "2005 Ocampo Decl.") ¶ 3.) In 1995, after extensive discussions, Sirenza agreed to manufacture for Mini-Circuits, and Mini-Circuits agreed to purchase

from Sirenza, amplifiers according to Mini-Circuits' comprehensive performance specifications. (Id. ¶¶ 6, 7.) Between 1996 and 2002, Sirenza sold more than 20 million amplifiers to Mini-Circuits, which Mini-Circuits subsequently resold under its own name. (Id. ¶¶ 8, 9.)

On October 10, 2002, Mini-Circuits attempted to return more than 610,000 amplifiers, valued in excess of $1,000,000, to Sirenza due to low frequency oscillation. (Id. ¶ 11.) By this time, Mini-Circuits had begun to design and manufacture its own amplifiers. (Id. ¶ 15.) Sirenza declined to accept their return, stating that the low frequency oscillation was not required by the comprehensive performance specifications. (Def.'s Br. at 5.)

In January 2003, Mini-Circuits commenced this litigation, accusing Sirenza of breaching an express warranty. On July 25, 2003, Sirenza filed an answer denying wrongdoing and counterclaims based on Mini-Circuit's alleged misuse of proprietary information. The counterclaims were (1) misappropriation of trade secrets; (2) unfair competition; (3) breach of a fiduciary duty; (4) breach of the covenant of good faith and fair dealing; and (5) tortious interference with contract. (Brown Decl. Ex. P, Answer and Countercl.)

Six days after Sirenza filed counterclaims, Mini-Circuits' attorneys expressed to Sirenza's attorneys that Mini-Circuits believed the counterclaims lacked merit and would seek sanctions if they were not withdrawn. (Mini-Circuits' Ltr. to Sirenza dated July 31, 2003 (annexed to Pl.'s Br.).) Sirenza refused to withdraw its counterclaims. On January 27, 2006, after the completion of discovery, each of the counterclaims was dismissed on

summary judgment. <u>Scientific Components Corp. v. Sirenza Microdevices</u>, Slip Copy, 2006 WL 2524187 (E.D.N.Y. 2006).

This motion for sanctions was filed in November 2006. It relates only to the counterclaims for misappropriation of trade secrets and breach of fiduciary duty.

## II.   DISCUSSION

### A.   Legal Standard for Rule 11 Sanctions

Rule 11 provides that a court may impose sanctions when (1) a pleading "is presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation"; (2) "the claims, defenses, and other legal contentions therein are [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; (3) the allegations and other factual contentions [lack] evidentiary support or, if specifically so identified, are [not] likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"; or (4) "the denials of factual contentions are [not] warranted on the evidence or, if specifically so identified, are [not] reasonably based on a lack of information or belief." Fed. R. Civ. P. 11(b), (c).

Rule 11 was enacted in order to "deter baseless filings in district court and thus . . . . streamline the administration and procedure of the federal courts." <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384 (1990). The rule "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." <u>Eastway Construction Corp. v. City of New York</u>, 762 F.2d 243, 253 (2d Cir. 1985). The rule is violated when "it appears that a pleading has

been interposed for any improper purpose." Greenberg v. Chrust, 297 F. Supp. 2d 699, 703 (S.D.N.Y. 2004).

If a factual allegation in a complaint, motion or other paper filed with the court has no evidentiary support, sanctions are appropriate unless the paper includes a specific disclaimer that additional investigation is necessary. O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996). Rule 11 sanctions are not appropriate, however, if evidentiary support is merely weak and the claim is unlikely to prevail, as opposed to being "utterly lacking in support." Id. at 1489.

A party defending a Rule 11 motion can escape sanctions even if it did not present enough evidence to successfully defend a summary judgment motion. See, e.g., Rubinberg v. Hydroponic Fabrications, Inc., 775 F. Supp. 56, 65 (E.D.N.Y. 1991); Hochberg v. Howlett, No. 92 Civ. 1822 (RPP), 1993 WL 33367, at *2 (S.D.N.Y. Feb. 4, 1993) (summary judgment alone is not a ground for Rule 11 sanctions; the claim must be "destined to fail" and made in bad faith). The court must distinguish between a claim that is merely "weak" and one that is clearly lacking in merit. See Gambello v. Time Warner Communications, Inc., 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002) ("Sanctions may not be imposed unless an allegation is utterly lacking in support, but, if it is clear that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands, sanctions are appropriate."); see also Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 166 (2d Cir.1999) (sanctions are "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.").

In order to avoid discouraging zealous advocacy, the Second Circuit has urged District Courts to limit imposition of sanctions to cases in which the pleading party "manipulate[s] the federal court system for ends inimicable to those for which it was created." Eastway, 762 F.2d at 254. The Second Circuit also urges district courts to avoid using hindsight to determine whether a pleading was valid, and to resolve all doubts in favor of the signer. Associated Indemnity Corp. v. Fairchild Industries, Inc., 961 F.2d 32, 34 (2d Cir.1992). Rule 11 sanctions are appropriate only where there is clear evidence that the claims are brought in bad faith, *i.e.*, "entirely without color and . . . for purposes of harassment or delay, or for other improper reasons." Browning Debenture Holders' Comm. v. DASA Corp., 560 F.2d 1078, 1088 (2d Cir. 1977).

  B.  Application of Rule 11 to Sirenza's Counterclaims

    1.  Sirenza's Counterclaim for Misappropriation of Trade Secrets

The court must determine whether a reasonable inquiry would have led an objective attorney to conclude that Sirenza's counterclaim for misappropriation of trade secrets clearly lacked evidentiary support and had no chance of success. Sanctions are appropriate only when "it is patently clear that a claim has absolutely no chance of success under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." Eastway, 762 F.2d at 254.

To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate (1) that it possessed a trade secret and (2) that the defendant used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. North Atlantic Instruments, Inc. v.

5

Haber, 188 F.3d 38, 43-44 (2d Cir. 1999). The court must determine whether an attorney who conducted a reasonable inquiry into Sirenza's counterclaim would have a basis to believe that Sirenza could satisfy both elements of this cause of action.

A trade secret is "any formula, pattern, device or compilation of information which is used in one's business and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it." Hudson Hotels Corp. v. Choice Hotels Int'l, 995 F.2d 1173, 1176 (2d Cir. 1993). Courts examine six factors to determine if a trade secret exists: (1) the degree to which the information is known outside of the business, (2) the extent to which employees and those involved in the business know the information, (3) the extent of measures taken by the business to guard the secrecy of the information, (4) the information's value to the business and competitors, (5) the degree of effort and money expended by the business to develop the information and (6) the difficulty with which outsiders may properly acquired or duplicate the information. Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990).

Sirenza has offered a viable evidentiary basis for believing that these factors weigh in its favor. It attests that its designs, process, and technical know-how were considered proprietary and not known outside of the business. (Ocampo Decl. dated Feb. 23, 2006 (Brown Decl. Ex. M) (hereinafter "2006 Ocampo Decl.") ¶ 8.) It points to the fact that the forty-five degree orientation of the die and wire bonds in its amplifiers accommodated higher injection molding, which was unique in the industry. (Id. ¶ 6.) It claims that various automated processes for testing amplifiers were unique to the SNA

product line and not in the public domain, and that this uniqueness gave Sirenza a distinct advantage in the industry.  (Id. ¶ 7.)  It argues that developing the amplifiers was both time consuming and expensive, and that any attempt to reverse engineer the amplifiers would require special equipment and skill.  (Ocampo Dep. Tr. at 23 - 48, 163 -164, 167, 169, 170.)  Mini-Circuits does not challenge the existence of this circumstantial evidence.

Although the counterclaim for misappropriation of trade secrets claim was dismissed at summary judgment, Sirenza's attorneys correctly point out that the court dismissed the claim because it did not find evidence of misappropriation, not because it found no trade secrets.  Without pointing to any direct evidence of a trade secret, Sirenza has presented sufficient circumstantial evidence to satisfy the threshold for defeating Rule 11 with regard to the first element of trade secret misappropriation, *i.e.*, the existence of trade secrets.  See Q-Co Industries, Inc. v. Hoffman, 625 F.Supp. 608, 618 (S.D.N.Y.1985) ("In most [misappropriation of trade secrets] cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place. ")

Sirenza may still be sanctioned if the court determines that it had no evidentiary basis for asserting the second element of a trade secrets misappropriation claim, which is that Mini-Circuits used the trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.  North Atlantic, 188 F.3d at 43.  Sirenza asserts that it is permitted to advance its claim based entirely on circumstantial evidence, arguing that "[b]ecause direct evidence of misappropriation is

difficult – usually almost impossible – to come by, courts uniformly permit misappropriation claims to rely on inferences that can be made from the evidence." (Def.'s Br. at 14.)

Circumstantial evidence is indirect evidence that is "based on inference and not on personal knowledge or observation." Black's Law Dictionary, 576 (7th ed. 1999). Pursuant to this definition, Sirenza advances the following circumstantial evidence in support of its claim: (1) Mini-Circuits had access to Sirenza's proprietary designs, drawings, and accumulated technical knowledge (2005 Ocampo Decl. ¶ 6); (2) Mini-Circuits' established an affiliate company that produced a substitute line of ERA amplifiers (id. at 15); (3) Kelvin Kiew, President of Mini-Circuit's affiliate, visited the facility in the Philippines where Sirenza made amplifiers, and saw the processes used (Kiew Dep. Tr. (Brown Decl. Ex. A) at 39-41); (4) the two companies' amplifiers were similar (2006 Ocampo Decl. ¶ 22); (5) Mini-Circuits was able to design and bring to market its version of the amplifiers very quickly (2005 Ocampo Decl. ¶ 15); and (6) a Sirenza employee who visited Mini-Circuits' production facility observed that the lead frames on the amplifiers were identical to those on Sirenza's. (Brown Decl. Ex. H (Van Buskirk Dep.) at 99.)

Mini-Circuits argues that the "reasonable inquiry" requirement of Rule 11(b) was not satisfied because all of Sirenza's evidence is based on the "surmise of its President John Ocampo that Mini-Circuits lacked the ability to design and engineer its own Amplifier." (Pl.'s Br. at 14.) Mini-Circuits argues that Sirenza neglected to compare Mini-Circuits' amplifiers to its own in order to establish similarities between the

8

amplifiers and that Sirenza disregarded Mini-Circuits' "build sheets" which detail Mini-Circuits' building process and distinguish Mini-Circuits' amplifiers from Sirenza's. (Id.; Pl.'s Br. at 16; Pl.'s Reply Br. at 7.) Mini-Circuits states that the sole fact that Mini-Circuits had a new source for its ERA line of amplifiers "mushroomed into a counterclaim seeking millions of dollars." (Pl.'s Br. at 14.)

Mini-Circuits proved that Sirenza's circumstantial evidence was unpersuasive and that the misappropriation claim was weak in its motion for summary judgment. The court agrees that Sirenza has been imprudent in choosing to litigate this claim. However, Rule 11 sanctions are not appropriate where there is a viable claim that is weak. See Eisenberg v. Yes Clothing Co., No. 90 Civ. 8280 (JFK), 1992 WL 36129, at * 4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the Court deems premature, or ill-advised, or weak"). Nor does it require that each attorney conduct exhaustive discovery. Hochberg, 1993 WL 33367, at *1 ("Rule 11 does not require that a plaintiff or her attorney drive down every avenue of inquiry. Inquiry into the facts of a case need only be 'reasonable under the circumstances.'") (quoting Rule 11). In retrospect, it was wasteful for Sirenza to litigate a claim on which it did not prevail, but because it possessed the aforementioned circumstantial evidence, it was not wholly unreasonable for it to pursue the claim.

### 2. Sirenza's Counterclaim for Breach of Fiduciary Duty

Mini-Circuits also moves for sanctions based on Sirenza's counterclaim for breach of a fiduciary duty. (Pl.'s Br. at 17.) It claims that there are no facts to support the assertion that a fiduciary duty existed. (Id.) Under New York law, an ordinary

commercial relationship does not automatically create a fiduciary duty between the parties.  In re Mid-Island Hosp. Inc., 276 F.3d 123, 130 (2d Cir. 2002).  However, "a long-standing distributorship relationship in which the manufacturer dominated the distributor, and pursuant to which the distributor was contractually required to disclose proprietary information regarding its customers to the manufacturer, creates a duty on the part of the manufacturer not to use that information to the detriment of the distributor." Abernathy-Thomas Eng'g Co. v. Pall Corp., 103 F. Supp. 2d 582, 604 (E.D.N.Y. 2000).

Mini-Circuits argues that the Abernathy exception could not possibly apply to create a fiduciary relationship between Sirenza and Mini-Circuits.  (Pl.'s Br. at 17.) Abernathy relied on two New York state decisions, each involving facts that created a unique relationship of dependence.  Zimmer-Masiello, Inc. v. Zimmer, Inc., 552 N.Y.S.2d 935 (1st Dep't, 1990) (plaintiff had acted as the exclusive distributor of the defendant's surgical equipment and orthopedic supplies); A.S. Rampell, Inc. v. Hyster Co., 144 N.E.2d 371 (N.Y. 1957) (plaintiff had been the defendant manufacturer's exclusive distributor in a particular territory for fifteen years and that it had expended substantial amounts of money, time and effort to develop, and had in fact developed a sales organization and market for the manufacturer's products.).  Although this case does not involve as clear-cut a situation of dependence as those cases, in this case (1) there is a long-term supply relationship between the parties; (2) Sirenza earns 40 percent of its revenue from Mini-Circuits; and (3) Sirenza provided confidential information to Mini-Circuits.  (Def.'s Br. at 12-13.)  Given that these facts demonstrated a close relationship between the parties, it was not "patently frivolous" for Sirenza to attempt to persuade the

10

court that a legal fiduciary duty existed and was violated when Mini-Circuits ended the supply relationship and began producing its own amplifiers.

### III.   CONCLUSION

For the foregoing reasons, Mini-Circuit's motion for sanctions is DENIED.

SO ORDERED.

Dated: March 30, 2007                                   /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.                                   NICHOLAS G. GARAUFIS
                                                                United States District Judge