UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SCIENTIFIC COMPONENTS CORP.
d/b/a MINI-CIRCUITS LABORATORY,

                    Plaintiff,           MEMORANDUM
                                        AND ORDER
   -against-
                                        03 CV 1851 (NGG)(RML)

SIRENZA MICRODEVICES, INC.,

                    Defendant.
--------------------------------------------------------X

LEVY, United States Magistrate Judge:

       Defendant Sirenza Microdevices, Inc. ("defendant") moves to strike the report and testimony of Jerry Gladstone, an expert witness for plaintiff Scientific Components Corporation d/b/a Mini-Circuits Laboratory ("plaintiff"). For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

       The basic dispute in this case is described in detail in my Report and Recommendation, dated July 10, 2006, familiarity with which is assumed. In short, for several years plaintiff bought amplifiers from defendant for resale, pursuant to a 1995 purchase agreement. (See Report and Recommendation, dated July 10, 2006, at 3.) In 2002, a dispute arose between the parties as to whether some of defendant's amplifiers exhibited unacceptable levels of low-frequency oscillation ("LFO" or "LF oscillation"). (See id. at 3-8.) Plaintiff brought claims for breach of express warranties and breach of the implied warranty of merchantability. (See id. at 5-6, 8.) Defendant asserted a variety of counterclaims (see id. at 7-8 & n.4), all of which have been withdrawn (see id. at 8 n.4) or dismissed under Fed. R. Civ. P. 56 (see Order, dated Aug. 30, 2006).

Pursuant to the court's scheduling orders, plaintiff and defendant exchanged expert reports on January 18, 2007.[1] (See Letter of Scott H. Wyner, Esq., dated Mar. 12, 2007; Jack Browne, Expert's Report Prepared for Defendants (Jan. 17, 2007) ("Browne Report"); Allen Podell, Expert Report (Jan. 17, 2007) ("Podell Report").) Subsequently, upon requests from the parties, the court granted several extensions for the mutual exchange of rebuttal expert reports. (See, e.g., Order, dated Apr. 18, 2008 (extending deadline for the final time, to April 22, 2008).) The parties timely exchanged reports pursuant to the extended deadlines. (See Jerry Gladstone, Rebuttal Expert Report (Apr. 12, 2008) ("Gladstone Report"); Allen Podell, Rebuttal Report (Apr. 22, 2008); cf. Defendant's Reply Memorandum of Law in Support of Its Motion to Strike the Report and Testimony of Jerry Gladstone, dated Aug. 8, 2008 ("Def.'s Reply Mem."), at 7 n.2 (discussing the timing of the production of the Gladstone Report).)

This Memorandum and Order is not the place for detailed analysis of the highly technical expert reports, but brief summaries are required. First, the Browne Report concluded that (1) "[t]he amplifiers supplied by [defendant] to [plaintiff] . . . are . . . 'not merchantable' due to the presence of LF oscillations present in some of the amplifiers," (2) "LF oscillations are not an inherent characteristic of the GaAs [i.e., gallium-arsenide] substrate used by [defendant] to build the ERA series of amplifiers," and (3) "[defendant]'s failure to test for LF oscillations did not comport with industry standards." (Browne Report at 2-3.)

Second, the Podell Report concluded that "[t]he existence of detectable low frequency noise and oscillation in some of the amplifiers, but not others, does not demonstrate

---

[1] Defendant submitted an additional expert report and rebuttal by other individuals that fall outside the scope of this motion. (See Memorandum of Law in Support of Defendant's Motion to Strike the Report and Testimony of Jerry Gladstone, dated July 18, 2008, at 2 nn.2-3.)

any defect in the material or workmanship of the amplifiers," and that "the low frequency oscillation and low frequency noise identified in certain of the ERA amplifiers that [plaintiff] purchased does not render those units unmerchantable." (Podell Report at 2.) In addition, it stated that

> low frequency noise in compound semiconductors is variable, and . . . a prudent customer must specify this performance, if it is important in his application . . . . [but] there was nothing in [plaintiff's] purchase order specifying low frequency noise, nor was it ever measured until several customers raised an issue concerning low frequency noise in a specialized application.

(Podell Report at 6-7.)

Finally, the Gladstone Report stated that "Mr. Podell's <u>Expert Report</u> draws misleading conclusions as he mixes the concepts of low-frequency noise and low-frequency oscillations—LFOs are not noise." (Gladstone Report at 4.) It further concluded that "Mr. Podell does not adequately examine the dire effects LFOs can have on systems performance." (Gladstone Report at 4.)

Defendant moves to strike the Gladstone Report on the grounds that it is not a rebuttal, but is instead "a <u>de novo</u> expert report [submitted] on the eve of trial that completely disregards the [plaintiff]'s report in chief." (Memorandum of Law in Support of Defendant's Motion to Strike the Report and Testimony of Jerry Gladstone, dated July 18, 2008 ("Def.'s Mem."), at 3.) Specifically, defendant contends that the Gladstone Report contains mostly new or repetitive information bearing on plaintiff's case in chief, with only token rebuttals of the Podell Report. Defendant also claims that plaintiff did not timely identify its rebuttal expert witness. Defendant seeks preclusion of Mr. Gladstone's report and testimony on both grounds.

**DISCUSSION**

Defendant raises two arguments for excluding Mr. Gladstone's report and testimony: (1) that his report is not a "rebuttal" expert report, and (2) that plaintiff did not timely identify Mr. Gladstone as an expert witness in this case. I will discuss the two arguments in turn.

**A. Scope of "Rebuttal"**

This dispute centers on Fed. R. Civ. P. 26(a)(2)(C)(ii). See Fed. R. Civ. P. 26(a)(2)(C)(ii) (governing the deadlines for the submission of expert testimony "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)"). "A rebuttal expert report is not the proper place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice." Ebbert v. Nassau County, No. 05 CV 5445, 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008) (internal quotation marks and citations omitted); see also Crowley v. Chait, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) ("Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party. It is not an opportunity for the correction of any oversights in the plaintiff's case in chief." (internal quotation marks and citations omitted)).

A review of the full Gladstone Report shows its central argument to be that the Podell Report conflated LF oscillation with LF noise, and that this confusion led Podell to draw a variety of unjustified conclusions regarding the amplifiers' performance and merchantability. (See, e.g., Gladstone Report at 3-6 (summarizing expert findings and offering "[h]ighlights of [i]naccuracies and [i]nconsistencies in the Podell Report").) This is archetypal rebuttal testimony: it identifies a flawed premise in an expert report that casts doubt on both that report's conclusions and its author's expertise. Cf. TC Sys. Inc. v. Town of Colonie, 213 F. Supp. 2d 171, 180 (N.D.N.Y 2002) (interpreting "same subject matter" in Rule 26(a)(2)(C)(ii) as allowing

rebuttal experts to use a different methodology to analyze the same facts considered by the expert in chief). When, as here, the alleged confusion in the report in chief turns on a subtle scientific distinction that neither side's experts have previously discussed, it is not only permissible but also obligatory for the rebuttal expert report to provide technical background information adequate to illustrate the point. See Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii) (stating that expert reports must include "a complete statement of all opinions the witness will express and the basis and reasons for them [and] the data or other information considered by the witness in forming them"); see also Long Term Capital Holdings v. United States, No. 3:01 CV 1290, 2003 WL 21518555, at *2 (D. Conn. May 15, 2003) ("An expert rebuttal report does exactly what it says: it rebuts, in the form of a complete statement of all of the opinions expressed by the author, the report of the opposing party's expert."). Hence, technical information in the Gladstone Report that was not previously the subject of expert testimony in this litigation, and without which a non-scientist would be unable to evaluate Mr. Gladstone's criticism of Mr. Podell's report, is not out of place in a rebuttal report. (See, e.g., Gladstone Report at 6-12 (explaining distinctions between LF noise and LF oscillation, noting relevant differences between gallium-arsenide and silicon semiconductor devices, and discussing industry standards).)

Defendant also argues that the Gladstone Report repeats information contained in the Browne Report, and as such those portions of the Gladstone Report are beyond the scope of rebuttal. See Crowley, 322 F. Supp. 2d at 550 ("At trial, rebuttal evidence is limited to that which is precisely directed to rebutting new matter or new theories presented by the defendant's case-in-chief" (internal quotation marks and citation omitted)). Defendant points to three

specific examples of this alleged repetition. (<u>See</u> Def.'s Mem. at 8 (listing the three examples and stating that they show that "[t]he Gladstone Report . . . is nothing but a fortified and padded version of the Browne Report, with a few references to the Podell Report thrown into the mix to help characterize it as a rebuttal report"); <u>see also</u> Def.'s Reply Mem. at 5-6 (stating that the Gladstone Report "swallows whole the Browne Report and contains all of its main points and then some").)

I find that of the three alleged repetitions identified by defendant, only one falls outside the bounds of rebuttal. First, defendant states that "both reports discuss . . . the use of GaAs in amplifiers." (Def.'s Mem. at 8.) The Browne Report's discussion of GaAs focuses on the difficulties of fabricating heterojunction bipolar transistors based on GaAs without introducing impurities and the undesirable effects of such impurities. (Browne Report at 5-6.) While the Gladstone Report touches on some of the same points (<u>see</u> Gladstone Report at 7-8), it discusses the matter in the context of distinguishing GaAs devices from silicon devices, with a particular focus on contrasting LF noise to LF oscillation (<u>see</u> Gladstone Report at 8-10). Accordingly, these portions of the Gladstone Report do not merely restate or bolster the Browne Report, but supply background information for Mr. Gladstone's conclusions.

Second, defendant alleges that both of plaintiff's expert reports "discuss . . . the LFO phenomenon." (Def.'s Mem. at 8.) Although it is true that both reports discuss LF oscillation (<u>compare</u> Browne Report at 4-5, <u>with</u> Gladstone Report <u>passim</u>), the Browne Report offers only a general overview of oscillation, without contrasting it to noise, while the Gladstone

-6-

Report centers on the distinction between noise and oscillation.[2]  This is appropriate rebuttal testimony.

Finally, defendant contends that the Gladstone Report improperly repeats and restates the Browne Report's analysis of "unconditional stability."  (Def.'s Mem. at 8.)  I agree.  The two reports offer similar definitions of the term and similar commentary on industry standards and merchantability.  (Compare Browne Report at 6-7, with Gladstone Report at 10-12.)  For example, Mr. Browne writes that "[b]ecause it is assumed that amplifiers are unconditionally stable, it would not be expected that the signals represented by the LF oscillations be specified in the data sheets" (Browne Report at 6), while Mr. Gladstone writes that "[l]ow-frequency oscillations are not expected and assumed to not exist in any usable amplifier[, so] LFOs are not included in an amplifier's specifications" (Gladstone Report at 11).  Nor does the Gladstone Report's discussion of unconditional stability add anything to its discussion of the distinction between LF oscillation and LF noise.  Consequently, I find that this portion of the Gladstone Report is not "intended solely to contradict or rebut evidence."  Fed. R. Civ. P. 26(a)(2)(C)(ii) (emphasis added).

Defendant urges that the proper remedy for this foray beyond the scope of rebuttal

---

[2] Defendant also suggests that this portion of the Gladstone Report is not appropriate rebuttal, because insofar as the distinction between noise and oscillation is important to the case, plaintiff's expert(s) should have foreseen the need to discuss it from the beginning.  (See Def.'s Reply Mem. at 4-5; see also Def.'s Mem. at 9-10.)  However, the Browne Report's reasonable failure to anticipate that the Podell Report would, allegedly, confuse the two phenomena does not bar plaintiff from addressing that distinction in a rebuttal expert report.  Cf. Crowley, 322 F. Supp. 2d at 551 ("The Third Circuit's rule does not automatically exclude anything an expert could have included in his or her original report.  Such a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material.").

expert testimony is preclusion of the Gladstone Report. (See, e.g., Def.'s Mem. at 10-11; Def.'s Reply Mem. at 6). But "[p]recluding testimony of an expert, even when there has not been strict compliance with Rule 26, may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants." Wechsler v. Hunt Health Sys., Ltd., 381 F. Supp. 2d 135, 155 (S.D.N.Y. 2003) (internal quotation marks and citation omitted); see also Sterling v. Interlake Indus., 154 F.R.D. 579, 587 (E.D.N.Y. 1994) ("Imposition of sanctions under Rule 37 is a drastic remedy . . . ."). Courts in the Second Circuit consider four factors on a motion to preclude expert testimony:

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

Softel, Inc. v. Dragon Med. & Sci. Commc'ns, 118 F.3d 955, 961 (2d Cir. 1997) (citing Outley v. City of New York, 837 F.2d 587, 590-91 (2d Cir. 1988)).

Applying the four Softel factors here, we see first that plaintiff's expert discussed unconditional stability not in bad faith but as part of his attempt to provide helpful background information. Second, the Gladstone Report is important to plaintiff's case. Third, defendant fears a disadvantage at trial "if [plaintiff] is allowed two bites at the apple by offering repetitive expert testimony on rebuttal." (Def.'s Reply Mem. at 9.) But defendant can cure such prejudice by making a motion in limine to preclude any testimony from Mr. Gladstone regarding unconditional stability that would duplicate the testimony of Mr. Browne. Fourth, this cure would not cause any significant delay or necessitate a continuance. In light of the availability of this much less drastic cure, it would not be appropriate to preclude Mr. Gladstone's report and

testimony on the grounds of one instance of duplication of plaintiff's report in chief.

## B. Identification of Plaintiff's Rebuttal Expert

Defendant additionally argues that "[t]he last minute introduction of a new expert . . . is . . . disallowed by Rule 26 as well as the scheduling orders entered by this Court." (Def.'s Mem. 5.) Specifically, defendant states that "[i]t was during pre-trial discovery that Plaintiff should have disclosed the names of all its expert witnesses," but plaintiff did not disclose Mr. Gladstone's name until "just two business days before the close of expert discovery." (Def.'s Reply Mem. at 6-7.) Defendant seeks sanctions under Rules 16(f) and 37(c) for this alleged discovery misconduct. See Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless.").

The parties made two joint requests for extensions of time to file rebuttal expert reports, and the court granted both. (See Order, dated Mar. 11, 2008; Order, dated Apr. 18, 2008.) These orders neither expressly limited the permissible rebuttal experts to the experts in chief nor specified deadlines for the identification of new expert witnesses. Plaintiff contends that it "has complied with Rule 26 and also with all discovery orders" (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Strike the Report and Testimony of Jerry Gladstone, dated Aug. 1, 2008 ("Pl.'s Mem."), at 6), while defendant argues that "[i]mplicit in the Court's decision to deem discovery closed as of [June 26, 2007] is the notion that no new

witnesses be introduced, nor any depositions be taken, past that date" (Def.'s Reply Mem. at 7).

It is unnecessary to decide whether plaintiff's disclosure of Mr. Gladstone's name was timely, because even if it was not, preclusion of his report and testimony under Rules 16(f) or 37(c) would be an excessive sanction. Turning again to the four-factor test for precluding expert testimony, see Softel, 118 F.3d at 961, I find that plaintiff had a good-faith belief that it was complying with discovery orders and that the Gladstone Report is important to plaintiff's case. The only possible prejudice to defendant would be the cost and delay required to depose an additional expert witness, but such prejudice would not outweigh the other factors. Finally, as plaintiff correctly points out, "no continuance is needed since no trial has been scheduled." (Pl.'s Mem. at 5.) In sum, if plaintiff was tardy in its disclosure of Mr. Gladstone's name, the error was harmless, and I will not preclude his report or testimony.

## CONCLUSION

For the reasons stated above, defendant's motion to strike is denied.

SO ORDERED.

Dated: Brooklyn, New York
November 13, 2008

/s/
ROBERT M. LEVY
United States Magistrate Judge